# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: MONEY CENTERS OF AMERICA, INC., *et al.*, | Chapter 11 |
| | Bankr. Case No. 14-10603-CSS |
| Debtors. | (Jointly Administered) |
| | |
| MARIA APRILE SAWCZUK, as Trustee of the Liquidating Trust of Money Centers of America, Inc., and Check Holdings, LLC, | Adv. Pro. No. 16-50410-CSS |
| | Civ. No. 17-319-RGA |
| Appellant, | |
| v. | |
| THUNDERBIRD ENTERTAINMENT CENTER, INC., | |
| Appellee. | |

## MEMORANDUM

Trustee appeals the Bankruptcy Court's Order, *In re Money Centers of America, Inc.*, 565 B.R. 87 (Bankr. D. Del. 2017) ("Dismissal Order"), which dismissed Trustee's complaint against Thunderbird Entertainment Center, Inc. ("Thunderbird"), a wholly owned entity of the Absentee Shawnee Tribe of Oklahoma, seeking to avoid and recover certain transfers to Thunderbird. For the reasons set forth below, the Dismissal Order is affirmed.

1. **Background.** Thunderbird concedes that Trustee's complaint accurately sets forth the facts concerning its relationship with the Debtors. (D.I. 17 at 2). Debtors provided debit card and credit card processing for patrons of Thunderbird's casino. Patrons presented their credit or debit cards to Thunderbird, who would then run those cards through equipment provided by Debtors. If the transaction was approved, Thunderbird advanced funds to the patrons, and Debtors would obtain an amount equal to the advanced amount from the patrons' credit or debit card issuers and forward those funds to Thunderbird, less a fee. (Adv. D.I. 1 at ¶ 10).[1]

---

[1] The docket of the adversary proceeding, captioned *Sawczuk v. Thunderbird Entertainment Center, Inc.,* Adv. Pro. No. 16-50410-CSS (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

2.      Debtors filed voluntary petitions for relief under Chapter 11 in March 2014. On March 21, 2016, the complaint against Thunderbird was filed, seeking to avoid and recover $230,633.80 in allegedly preferential transfers or fraudulent conveyances paid by Debtors to Thunderbird in the 90 days prior to Debtors' bankruptcy filing. (Adv. D.I. 1). Thunderbird filed a motion to dismiss the complaint on May 5, 2016, arguing that it had not waived its tribal sovereign immunity and that the Bankruptcy Court lacked subject matter jurisdiction over the adversary proceeding. (Adv. D.I. 5). The Bankruptcy Court agreed and entered the Dismissal Order on February 28, 2017.[2] On March 13, 2017, a timely appeal was filed. (D.I. 1).

3.      It is undisputed that Thunderbird is wholly owned by the Absentee Shawnee Tribe of Oklahoma and is a tribal corporation and tribal entity with sufficient relationship with the Absentee Shawnee Tribe to enjoy the tribe's sovereign immunity.[3] The sole issue on appeal is whether the Bankruptcy Court correctly held that Congress did not abrogate tribal sovereign immunity in the Bankruptcy Code. The appeal is fully briefed. (*See* D.I. 15, 17 (adopting and incorporating the arguments set forth in D.I. 16), 18).

4.      **Jurisdiction and Standard of Review.** The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). "On appeal from an order issued by the Bankruptcy Court, the Court 'review[s] the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof.'" *In re Energy Future Holdings Corp.*, 558 B.R. 684, 686 (D. Del. 2016) (quoting *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998)). The sole issue on appeal is whether

---

[2] The Dismissal Order also addressed an adversary proceeding captioned *Sawczuk v. Quapaw Casino Auth. of the Quapaw Tribe of Okla.*, Adv. No. 14-50437-CSS, which involved the sovereign immunity of the defendant ("Quapaw"). Quapaw also appealed the Dismissal Order. (Misc. No. 17-78-RGA). On April 6, 2017, the appeals were consolidated under Civ. No. 17-319-RGA. On February 28, 2018, the parties stipulated to dismissal of the appeal as it relates to Quapaw. (D.I. 19). This Memorandum Order addresses the appeal solely as it relates to Thunderbird.
[3] *See* D.I. 15 at 5, n.2.

the Bankruptcy Court properly construed §§ 106(a) and 101(27) of the Bankruptcy Code in holding that tribal sovereign immunity is not abrogated under the Bankruptcy Code, which is a legal determination to be reviewed *de novo*.

5. **Discussion**. "Among the core aspects of sovereignty that tribes possess – subject ... to congressional action – is the 'common law immunity from suit traditionally enjoyed by sovereign powers.'" *Michigan v. Bay Mills Indian Cmty.*, 134 S.Ct. 2024, 2030 (2014) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Tribal sovereign immunity is based on tribes' status as "distinct, independent political communities, retaining their original natural rights" and "separate sovereigns pre-existing the Constitution[.]" *Santa Clara*, 436 U.S. at 55-56. Because of this unique status, tribal sovereign immunity is not congruent with immunity enjoyed by the states or the federal government. *Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). In its most recent reaffirmation, the Supreme Court acknowledged tribal sovereign immunity as a "special brand of sovereignty the tribes retain." *Bay Mills*, 134 S.Ct. at 2031.

6. Trustee opposed dismissal, asserting that Congress abrogated Thunderbird's sovereign immunity in 11 U.S.C. § 106. While Congress may waive tribal sovereign immunity by statute, the Supreme Court has held that "such a congressional decision must be clear." *Bay Mills*, 134 S.Ct. at 2031. Congressional waivers further "cannot be implied, but must be unequivocally expressed." *Santa Clara*, 436 U.S. at 58; *Bay Mills*, 134 S.Ct. at 2031-32 ("That rule of construction reflects an enduring principle of Indian law: Although Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government.") Section 106 waives sovereign immunity for "governmental units" which are defined at § 101(27) as "a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 106. Trustee argued that the reference to "other ... domestic government[s]" can only mean Indian tribes, thus the congressional waiver is

3

clear and unequivocal. Recognizing a split of authority on this issue, the Bankruptcy Court rejected Trustee's argument and adopted the rationale of *Buchwald Capital Advisors, LLC v. Papas (In re Greektown Holdings, LLC)*, 532 B.R. 680 (E.D. Mich. 2015) and *Whitaker v. Dakota Finance Corp. (In re Whitaker)*, 474 B.R. 687 (B.A.P. 8th Cir. 2012). *See Money Centers*, 565 B.R. at 101-03. These decisions, holding that Congress has not clearly and unequivocally expressed an intent to abrogate sovereign immunity of Indian tribes under §§ 106(a) and 101(27), were "well reasoned, and carefully construe the text of the Bankruptcy Code." *Id.* at 103.

7. On appeal, Trustee argues that the Dismissal Order should be reversed because, in *Krystal Energy*, the only court of appeals to consider this issue determined that tribes are "domestic governments." (D.I. 15 at 7). The Ninth Circuit held that "[i]t is clear from the face of §§ 106(a) and 101(27) that Congress did intend to abrogate the sovereign immunity of *all* 'foreign and domestic governments." *See Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1057 (9th Cir. 2003) (emphasis in original). "Indian tribes are certainly governments," which the Supreme Court has described as "'domestic dependent nations that exercise inherent sovereign authority over their members and territories.'" *Id.* (citations omitted). "[T]he category 'Indian tribes' is simply a specific member of the group of domestic governments." *Id.* at 1058. Trustee urges the Court to adopt this interpretation. (D.I. 15 at 8). Trustee argues that Thunderbird has offered no other possible definition for "other ... domestic government[s]," which can only mean Indian tribes "because there is nothing else to which it could possibly refer." (*See id.*). Trustee further argues that Congress need not invoke any "magic words" (*i.e.*, Indian tribes); rather, the intent to abrogate must simply be "clearly discernable from the statutory text in light of traditional interpretive tools." (*Id.* at 10).

8. Conversely, Thunderbird argues that the Bankruptcy Court properly joined *Whitaker* in rejecting *Krystal Energy*'s reliance on "domestic dependent nations" language in prior cases,

4

finding a waiver by implication, which is prohibited by Supreme Court precedent. (*See* D.I. 16 at 11). Thunderbird contends that Congress included the catch-all "other ... domestic government[s]" to avoid any argument over terminology used by many types of local domestic governments not expressly identified – *e.g.*, towns, townships, villages, boroughs, counties, and parishes. (*Id.* at 14). Thunderbird argues it would make little sense to include a catch-all provision solely to address Indian tribes, when the term "Indian tribe" would have been much clearer and consistent with the Supreme Court's long-standing requirement that Congress be explicit in enacting waivers of tribal sovereign immunity. (*Id.*) Thunderbird argues that the overwhelming weight of recent authority is in agreement and cites a recent decision on this issue from a bankruptcy court in the Third Circuit with nearly identical facts. (*See* D.I. 16 at 9 (citing *Subranni v. Navajo Times Publishing Co., Inc.*), 568 B.R. 616 (Bankr. D.N.J. 2016)). *Subranni* also involved a claim against a tribe to avoid preferential payments. *See id.* at 618. The tribe moved to dismiss, arguing that §§ 106(a) and 101(27) were not sufficiently clear or unequivocal to constitute a waiver. *Id.* The court adhered to the basic canons of statutory interpretation by following the plain language of § 106. *Id.* at 624. "The plain language of [§] 106(a) is clear and unambiguous. It does not abrogate sovereign immunity for Indian tribes. If Congress had intended to abrogate sovereign immunity to Indian tribes under [§] 106, it could easily and expressly have done so, but it did not." *Id.* at 625.

9. The Court agrees with the reasoning set forth in *Whitaker*, *Greektown* and *Subranni*. In *Whitaker*, the Eighth Circuit Bankruptcy Appellate Panel adopted the bright line rule set forth in *In re National Cattle Congress*, 247 B.R. 259, 267 (Bankr. N.D. Iowa. 2000). Absent a specific mention of "Indian tribes" in the Bankruptcy Code, any finding of abrogation under § 106(a) necessarily relies on inference or implication, both of which are prohibited by the Supreme Court:

> Courts have found abrogation of tribal sovereign immunity in cases where Congress has included "Indian tribes" in definitions of parties who may be sued under specific statutes . . . Where the language of a jurisdictional grant is unambiguous as to its application to Indian tribes, no more is needed to satisfy the *Santa Clara* requirement than that Congress

5

unequivocally state its intent ... Where the language of a federal statute does not include "Indian tribes" in definitions of parties subject to suit or does not specifically assert jurisdiction over "Indian tribes," courts find the statute insufficient to express an unequivocal congressional abrogation of tribal sovereign immunity.

*Whitaker*, 474 B.R at 61 (quoting *National Cattle,* 247 B.R. at 267 (internal citations and quotation marks omitted)). In *National Cattle,* Judge Kilburg explained:

> The [Bankruptcy] Code makes no specific mention of Indian tribes. Unlike States and foreign governments, Indian tribes are not specifically included in the § 101(27) definition of "governmental unit." In order to conclude Congress intended to subject Indian tribes to suit under the Code, the Court would need to infer such intent from language which does not unequivocally and unambiguously apply to Indian tribes. Considering the Supreme Courts pronouncements on tribal sovereign immunity, such an inference is inappropriate.

*Id.* The *Whitaker* court agreed, holding that any other interpretation "requires an inference which is inappropriate in this analysis." *Whitaker*, 474 B.R. 695. Similarly, *Greektown* concerned an adversary proceeding against an Indian tribe seeking to avoid an alleged fraudulent transfer, and the tribe responded by asserting sovereign immunity. *Greektown*, 532 B.R. at 682-83. Relying heavily on *Whitaker*, the court looked to whether, in § 106, "Congress unequivocally, unmistakably and without ambiguity, by invoking the phrase 'or other domestic government[s],' intended to abrogate the 'special brand of sovereignty' that Indian tribes enjoy." *Id.* at 690. "[T]here is not one example in all of history where the Supreme Court has found that Congress intended to abrogate tribal sovereign immunity *without* expressly mentioning Indian tribes somewhere in the statute." *Id.* at 693. Because it could not say with "perfect confidence" that Congress intended the phrase to waive tribal sovereign immunity, the *Greektown* court dismissed the action. *Id.* at 697.

10. **Conclusion.** The Court is persuaded by these well-reasoned decisions and finds no error in the Bankruptcy Court's conclusion that Congress did not unequivocally express an intent to abrogate sovereign immunity of Indian tribes in §§ 106(a) and 101(27). Section 101(27)'s reference to "other ... domestic government[s]" falls short of the clarity required for abrogation of tribal sovereign immunity.

6

A separate order will be entered.

Entered this 29 day of March, 2018.

*Richard G. Andrews*
United States District Judge